IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW J. KELLY, an Individual, ) | CASE NO._____ |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT AND JURY DEMAND** |
| v. ) | |
| ) | |
| OMAHA PUBLIC POWER DISTRICT, ) | |
| ) | |
| Defendant. ) | |

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38 and NECivR 38.1, Plaintiff hereby demands trial by jury to 12 jurors on all those issues triable of right by a jury.

COMES NOW Plaintiff, Andrew J. Kelly ("Mr. Kelly"), by and through his undersigned attorneys, brings this complaint against the Defendant, Omaha Public Power District ("Defendant"), and alleges, avers and states as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for employment discrimination brought pursuant to the Uniformed Employment and Reemployment Rights Act of 1994 ("USERRA"). 38 U.S.C. § 4301 *et seq*. Defendant violated Mr. Kelly's USERRA rights by denying him benefits he otherwise would have received and future benefits to which he is entitled, but for his service in the uniformed service of the United States.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3).

3. The United States District Court for the District of Nebraska is a proper venue for this action under 28 U.S.C. § 1391 and 38 U.S.C. § 4323(c)(2) because Defendant maintains a place of business in this judicial district.

4. All statutory conditions precedent to the initiation of this lawsuit have been fulfilled.

### III. PARTIES

5. Mr. Kelly is a resident of Blair, Nebraska. Mr. Kelly is currently employed by Defendant, as a Chemist at Fort Calhoun Station.

6. Mr. Kelly is a Veteran of the United States Navy and performed service in a uniformed service of the Unites States.

7. Mr. Kelly is an employee within the meaning of 38 U.S.C. § 4303(3) and 20 C.F.R. § 1002.5(c) because, he is a citizen employed by an employer that is incorporated (or otherwise organized) in the United States.

8. Defendant is a public power utility, and a political subdivision of the state of Nebraska, that maintains a place of business at an office located at 444 South 16th Street Mall, Omaha, Nebraska, 68102.

9. Defendant is an employer within the meaning of 38 U.S.C. § 4303(4)(A) and 20 C.F.R. § 1002.5(d)(1) and is a private employer within the meaning of 38 U.S.C. § 4323(i).

### IV. FACTS

10. The United States Navy is a branch of the Armed Forces and is a uniformed service within the meaning of 38 U.S.C. § 4303(16).

11. From August 10, 1998 through September 9, 2006, Mr. Kelly served in the United States Navy, as a Submarine Warfare Specialist.

12. During his enlistment, Mr. Kelly received the Navy Medal of Good Conduct, the National Defense Service Medal, the Global War on Terrorism Service Medal, the Global War on Terrorism Expeditionary Medal, the Humanitarian Service Medal, the Navy "E" Ribbon, and the Overseas Service Medal for his service to the United States of America.

13. In February of 1999, Mr. Kelly attended the Navy Machinist's Mate "A" School.

14. In September of 1999, Mr. Kelly attended the Naval Nuclear Power Training Command School.

15. In April of 2000, Mr. Kelly received special training on Plant Operations on MARF PROTOTYPE.

16. In September of 2000, Mr. Kelly was trained as an Instructor for the United States Navy.

17. On or about September 9, 2006, Mr. Kelly was honorably discharged from the United States Navy, as a Petty Officer First Class.

18. Mr. Kelly received the Montgomery Chapter 30 GI Bill.

19. The Montgomery Chapter 30 GI Bill ("MGIB-AD") provides up to 36 months of education benefits. The amount of benefit depends on a number of factors including (1) the length of service, (2) the type of education, (3) the servicemembers MGIB-AD category, (4) whether the servicemember qualifies for a college fund or a "kicker," (5) how much the servicemember has paid into the program.

20. Mr. Kelly paid into his MGIB-AD from August 1998 through July 1999, in the amount of $100 every month.

21. Mr. Kelly paid $600 in 2005 for the MGIB-AD "kicker" program. This program, through monthly payments, allots additional funds into a servicemembers GI Bill.

22. The MGIB-AD requires a servicemember to pay into the program to obtain the benefit. The MGIB-AD amount that a servicemember is eligible for is directly influenced by the amount the servicemember themselves pay into the program.

23. From August 2016-July 2017 Mr. Kelly received Post 9/11 GI Bill benefits.

24. The Post- 9/11 GI Bill determines the amount a servicemember is eligible for based on the amount of active service they have had since September 10, 2001. Mr. Kelly was eligible for Post 9/11 benefits after exhausting all MGIB-AD benefits.

25. Mr. Kelly was eligible for both MGIB-AD and Post 9/11 Benefits due to his active duty service in the United States Navy before and after September 11, 2001.

26. On or about September 26, 2006, Mr. Kelly began working for Defendant.

27. On or about March 1, 2008, the Defendant's Supervisors Policy Manual, was updated. This manual outlined the Employee Education Program.

28. The Employee Education Program ("EEP") provides that "any regular, full-time employee who has been employed by [Defendant] at least six (6) months is eligible to participate. Persons on long-term disability are eligible to participate." *See* Omaha Public Power District Supervisors Policy Manual, Employee Education Program Policy, 2.0 Scope, p. 1 (2008).

29. Mr. Kelly met all requirements to qualify for EEP benefits.

30. Under the EEP, employees may pay schools up front and be reimbursed by the Defendant after submitting a grade report and receipt, or an employee may have the Defendant advance the employee's tuition and reimbursable fees directly to the school, upon receipt of an invoice from the school. *See* Omaha Public Power District Supervisors Policy Manual, Employee Education Program Policy, 4.2, Tuition Assistance, p. 2 (2008).

31. Bellevue University is a private university in Bellevue Nebraska. It is one of the approved universities, colleges, or institutions that tuition repayment can be applied to through the Defendant's EEP. *See,* Employee Education Program, Current Schools approved under EEP, p. 3 (2011); *Human Resources Services Center,* Current Schools Approved under EEP, p. 1 (2014).

32. To apply for EEP benefits, Mr. Kelly completed, provided and/or submitted any and all required information, documents, forms, signatures and information to the Defendant in compliance with the requirements of the EEP.

33. On or about June 2010, following the procedures set forth by the Defendant under the EEP, Mr. Kelly claimed tuition benefits in the amount of $8,705.33 for bachelor's degree courses at Bellevue University for tuition from August to December 2010.

34. On or about January 13, 2011, despite meeting all requirements under the EEP, Defendant willfully, intentionally and improperly denied Mr. Kelly's request to receive reimbursement through the EEP despite providing this benefit to employees who were not members of the United States uniformed services, citing "denial due to VA Benefits exceeding employee's tuition expenses."

35. On or about January 16, 2011, following the procedures set forth by the Defendant under the EEP, Mr. Kelly claimed tuition benefits through the EEP for bachelor's degree courses at Bellevue University, for tuition from January to March 2011, in the amount of $4,070.00. This amount was paid to Bellevue University by the Defendant.

36. On or about April 25, 2011, following the procedures set forth by the Defendant under the EEP, Mr. Kelly claimed tuition benefits for bachelor's degree courses at Bellevue University through the EEP, for tuition in May of 2011, in the amount of $3,200.00.

37. Despite meeting all requirements under the EEP, Defendant willfully, intentionally and improperly denied Mr. Kelly's request to receive reimbursement for the May 2011 tuition expenses.

38. On or about May 9, 2011, Mr. Kelly was contacted by Bellevue University, informing him that Defendant requested payment back in the amount of $4,070.00, for tuition payment for January to March 2011. Mr. Kelly was required to repay Bellevue University this amount.

39. On or about May 9, 2011, Mr. Kelly contacted the Defendant's Human Resources Employee Education Specialist, Darleen Brown, regarding the Defendant's EEP and the Defendant's request for repayment of $4,070, and Mr. Kelly informed Darlene Brown of the Defendant's obligations under USERRA.

40. On or about May 10, 2011, Mr. Kelly contacted the Defendant's Manager of Human Resource Administration, Patricia Johnson, and expressed concern that Defendant was violating USERRA. Mr. Kelly did not receive a response from Patricia Johnson.

41. On or about May 10, 2011, Mr. Kelly contacted his supervisor, Leland ("Lee") Shubert, and informed him that he was raising a concern regarding the EEP.

42. On or about May 12, 2011, Darleen Brown re-sent Mr. Kelly the previous January 2011 correspondence that willfully, intentionally, and improperly denied Mr. Kelly's EEP benefits.

43. On or about May 13, 2011, Mr. Kelly contacted the Defendant's Assistant Manager of Labor Relations, Paula Pittman, to discuss the EEP and Mr. Kelly's concern that his rights were being violated and he was being discriminated against under USERRA.

44. On or about May 19, 2011, Paula Pittman, on behalf of the Defendant, informed Mr. Kelly that the Defendant was denying him the EEP benefits under the incorrect belief that because Mr. Kelly received other benefits under the MGIB-AD he was not eligible under the EEP and despite providing the same benefits to employees who were not in the uniformed services.

45. On or about May 20, 2011, Mr. Kelly responded to Paula Pittman and outlined the discrimination Mr. Kelly suffered by and due to the Defendant's incorrect interpretation of USERRA and its application to the Defendant's Employee Education Program.

46. On or about May 20, 2011, Paula Pittman upheld the Defendant's decision, re-affirmed the incorrect application of the EEP policy, and denied the benefits to Mr. Kelly that were otherwise available to employees not in the United States uniformed services. Mr. Kelly was eligible for Veteran's Affairs benefits.

47. As a direct result of Defendant's willful, intentional, and improper denial of tuition reimbursement, Mr. Kelly lost substantial benefits.

48. As a direct result of Defendant's willful, intentional, and improper denial of tuition reimbursement, Mr. Kelly feared the Defendant would retaliate against him if Mr. Kelly applied for future benefits. Thus, the Defendant's willful, intentional, and improper denial of tuition reimbursement prevented Mr. Kelly from applying for future benefits that he would have otherwise been eligible to receive under the EEP for his further studies.

49. On or about May 13, 2011, in accordance with 38 U.S.C. § 4322(a) of USERRA, Mr. Kelly filed a USERRA claim with the Veterans' Employment and Training Services ("VETS") of the United States Department of Labor ("DOL").

50. VETS investigated Mr. Kelly's claim, and it concluded on or about September 29, 2011 that the Defendant violated Mr. Kelly's rights under USERRA.

51. On or about November 4, 2011 the Department of Labor closed the case, due to an inability to obtain a satisfactory resolution of Andrew Kelly's complaint. The Department of Labor communicated the results of the investigation to Mr. Kelly and informed him of his right to request the case be referred to the United Sates Attorney General.

52. Mr. Kelly requested to have his USERRA claim referred to the United States Attorney General, the Department of Justice.

53. In November 2011, the Department of Labor referred Plaintiff's Claims to the Department of Justice.

54. On or about May 25, 2012, the Department of Justice indicated receipt of Mr. Kelly's complaint, but refused to provide Mr. Kelly with representation in the matter.

## V. USERRA CLAIM

55. Andrew J. Kelly repeats and realleges paragraph 1-54, above, as if set forth at length.

56. USERRA is a federal statute that protects servicemembers' and veterans' civilian employment rights. 38 U.S.C. § 4301 *et seq.* (1994).

57. USERRA provides that "an employer may not discriminate in employment against or take any adverse employment action against any person because such person . . . has exercised a right provided for in this chapter. 38 U.S.C § 4311(b).

58. USERRA applies to "a person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in

employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a) (1994).

59. Mr. Kelly was a member of the United States uniformed services and meets the requirements for eligibility under USERRA.

60. A claim for discrimination under USERRA exists when "the person's membership in the uniform services is a motivating factor in the employer's action, unless the employer can prove that the action would have been take in the absence of such membership." 38 U.S.C. § 4311(c)(1).

61. Mr. Kelly met all requirements to receive benefits under the Defendant's EEP, but was denied EEP benefits.

62. Defendant discriminated against Mr. Kelly and violated USERRA by denying him a benefit of employment, in the form of tuition benefits under Defendant's EEP. But for Mr. Kelly being a member of the United States uniformed services, Mr. Kelly would have received tuition benefits as an employee benefit from Defendant. Similarly situated employees that were not member of the United States uniformed services would have received the employment benefits that Mr. Kelly was and is now being denied. 20 C.F.R. § 1002.150.

63. A motivating or substantial factor in Defendant's denial of Mr. Kelly's employment benefits was Mr. Kelly's status as a member of the United States uniformed services, in direct violation of USERRA.

64. Defendant's violations of USERRA willful, intentional, improper and in reckless disregard of Plaintiff's rights under the statute.

65. Mr. Kelly has been damaged by the actions of Defendant.

## VI. PRAYER FOR RELIEF

WHEREFORE, Andrew J. Kelly respectfully prays for the following relief:

a. Declare that the Defendant violated USERRA by denying Andrew J. Kelly employment benefits and that such actions were willful;

b. Order that Defendant comply with the provisions of USERRA;

c. Order that the Defendant pay Plaintiff all amounts due to him for the loss of benefits suffered by reason of Defendant's willful violations of USERRA, pursuant to 38 U.S.C. § 4323(d)(1)(B);

d. Award Mr. Kelly prejudgment interest on the amount of lost benefits;

e. Award Mr. Kelly liquidated damages in an amount equal to the amount of lost benefits suffered by reason of Defendant's willful violations of USERRA, pursuant to 28 U.S.C. § 4323 (d)(1)(C);

f. Award Mr. Kelly his attorney's fees, expert witness fees, and other litigation expenses pursuant to 28 U.S.C. § 4323(h)(2);

g. The costs Mr. Kelly has incurred in bringing this action; and

h. Grant any other, further and additional relief as this Court deems necessary and appropriate.

DATED this 19th day of January 2021.

        ANDREW J. KELLY, Plaintiff,

        By: /s/ Eric W. Tiritilli
           Eric W. Tiritilli, #22727
           Brian J. Brislen, # 22226
           LAMSON DUGAN & MURRAY LLP
           10306 Regency Parkway Drive
           Omaha, NE 68114
           Telephone: (402) 397-7300
           Telefax: (402) 397-7824
           etiritilli@ldmlaw.com
           bbrislen@ldmlaw.com
           *ATTORNEYS FOR PLAINTIFF*

719301