IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW J. KELLY, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>OMAHA PUBLIC POWER DISTRICT,<br><br>Defendant. | 8:21-CV-22<br><br>**MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Andrew J. Kelly has sued Omaha Public Power District (OPPD) for purportedly violating the Uniformed Services Employment and Reemployment Rights Act (USERRA). Filing 1. Both parties have cross-moved for summary judgment. Filing 29; Filing 33. For the reasons stated herein, the Court grants OPPD's Motion and denies Kelly's Motion.

## II. BACKGROUND

Kelly is a former member of the United States Navy. Filing 31-3 at 5. During his military service, Kelly paid into the Montgomery G.I. Bill and its Kicker Program. Filing 31-3 at 8. In September of 2006, Kelly was honorably discharged from the Navy and began working for OPPD as a chemistry technician. Filing 1 at 3; Filing 31-3 at 5–6.

Kelly enrolled in classes at Bellevue University in 2010. Filing 31-3 at 6. In January of 2011, Kelly applied for OPPD's Employee Education Program (EEP) benefits to help pay for his

1

spring classes at Bellevue. Filing 31-3 at 9. The EEP is a tuition-assistance program maintained by OPPD to help its employees pay for tuition and certain fees incurred at approved university colleges, vocational schools, and long-distance-learning schools. Filing 31-2 at 4–5. Under the EEP, OPPD would pay up to $5,000 each calendar year to either reimburse the employee after OPPD received a grade report and receipt or make payment directly to the school after OPPD received an invoice from the school. Filing 31-2 at 5. The main dispute in this case centers on a provision in the EEP reducing the amount of EEP benefits if an employee is receiving tuition assistance from another source. Filing 31-2 at 5. This provision provides:

> [T]his assistance may not be available to employees receiving tuition assistance from other sources, i.e. Pell Grants, VA Education Benefits, Scholarships, etc., unless these sources do not cover the tuition in full. In these cases, assistance is available for the balance of tuition, as long as the employee has not reached maximum payout for the calendar year.

Filing 31-2 at 5. Therefore, if another source covers the full amount of tuition, an employee will not receive any EEP benefits. Filing 31-2 at 2.

OPPD approved Kelly for EEP benefits and paid $4,070.00 directly to Bellevue University for Kelly's Spring 2011 classes. Filing 31-3 at 9. At that time, Kelly was not yet receiving his G.I. Bill benefits because he was still filling out paperwork. Filing 31-3 at 9. Sometime later,[1] Kelly applied for the remaining $930.00 in EEP benefits to be used for his 2011 summer classes at Bellevue University.[2] Filing 31-3 at 9. By this time, Kelly was receiving G.I. Bill benefits, which included about $1000.00 per month paid directly to him and back-paid benefits for the time Kelly was enrolled in classes at Bellevue University in 2010. Filing 31-3 at 7. Because the EEP

---

[1] The record is unclear as to when Kelly applied for EEP benefits for his 2011 summer classes and when OPPD ultimately denied them.
[2] Kelly also applied for retroactive EEP benefits for his tuition expenses from 2010. Filing 31-3 at 11.

application form required him to disclose any additional financial aid, Kelly informed OPPD that he was receiving G.I. Bill benefits. Filing 31-3 at 9, 63.

When OPPD learned that Kelly was receiving G.I. Bill benefits, it denied his claim for EEP benefits. Filing 31-3 at 9–10. According to OPPD, Kelly's request for EEP benefits fell outside the program's guidelines because he was receiving "VA Education Benefits" in the form of his G.I. Bill benefits that exceeded the costs of his tuition.[3] Filing 31-2 at 3, 23. OPPD then obtained reimbursement from Bellevue University for the $4,070.00 it had paid for Kelly's Spring 2011 classes. Filing 31-3 at 16. Bellevue University subsequently sent a bill for that amount to Kelly. Filing 31-3 at 16.

Kelly disputed OPPD's decision. Filing 35-3 at 16–19. During the dispute, Paula Pittman, an assistant manager of labor relations at OPPD and the individual who decided to deny Kelly EEP benefits, told him that attempting to use EEP and G.I. Bill benefits simultaneously was "an illegal duplication of federal benefits considered to be unjust enrichment and is subject to prosecution." Filing 35-3 at 19. She also explained that she found Kelly's "blatant and aggressive display of entitlement" to be "extremely disheartening."[4] Filing 35-3 at 16. Kelly claims that, after Pittman made these statements, he decided to stop applying for EEP benefits because he did not want OPPD's labor relations department to have negative feelings towards him that would cause him to be fired or denied promotions. Filing 31-3 at 17. Because Kelly did not apply for EEP benefits while continuing his education, he believes that OPPD deprived him of $17,288.00 in EEP benefits. Filing 34 at 9.

---

[3] The email OPPD sent to Kelly denying his application stated that from August to December of 2010 Kelly paid $8,705.33 in tuition and fees and received VA Benefits totaling $10,856.10. Filing 31-2 at 23. Kelly does not dispute those numbers. Filing 31-3 at 13. Kelly also admitted in his deposition that his G.I. Bill benefits covered the cost of his tuition and fees in 2011. Filing 31-3 at 14.

[4] Pitman also stated in an email to other employees that OPPD did not need employees like Kelly. Filing 35-3 at 16. The statement does not mention Kelly's military status. Pittman claims that her statement was an expression of frustration. Filing 35-3 at 9.

3

In May of 2011, Kelly filed a USERRA claim with the Veterans' Employment and Training Services (VETS) of the United States Department of Labor. Filing 1 at 7. After an investigation, VETS determined that OPPD violated Kelly's rights under USERRA and that "Kelly should not be forced by OPPD to utilize his GI Bill benefits." Filing 35-3 at 22. VETS also concluded that G.I. Bills benefits are service benefits, analogous to healthcare benefits, not a grant. Filing 35-3 at 22. However, OPPD maintained its position that Kelly was not entitled to EEP benefits. Filing 35-3 at 10. Ultimately, the Department of Justice received Kelly's complaint but declined to represent him in this matter. Filing 1 at 8.

On March 30, 2020, Kelly filed suit against OPPD. Filing 1. In his Complaint, Kelly claims that OPPD violated USERRA when it denied him EEP benefits. Filing 1 at 9. According to Kelly, by denying him EEP benefits because he was receiving G.I. Bill benefits, OPPD discriminated against him for being a former member of the United States uniformed services. Filing 1 at 9.

### III.     ANALYSIS

#### A.  Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v.*

*Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. USERRA Claim

Kelly's USERRA claim is based on OPPD's decision to deny him EEP tuition assistance benefits because Kelly was already receiving G.I. Bill benefits. In Kelly's view, OPPD denying

him EEP benefits because he was receiving G.I. Bill benefits is equivalent to discriminating against him because of his military status. Filing 34 at 15. OPPD responds that it has not discriminated against Kelly because it denies or reduces EEP benefits to any employee—whether former military or nonmilitary—receiving funds for tuition from another source. Filing 30 at 7. According to OPPD, rather than requesting equal treatment with his nonmilitary counterparts, Kelly seeks preferential treatment by receiving both EEP benefits and G.I. Bill benefits simultaneously. Filing 30 at 8.

Congress passed USERRA "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301. As relevant here, USERRA prevents employers from denying "any benefit of employment . . . on the basis" of an individual's status as a former member of the military. 38 U.S.C. § 4311(a). "Benefit of employment" under USERRA is defined "very broadly as 'any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) . . . , and includes . . . awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.'" *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005) (alteration in original) (quoting 38 U.S.C. § 4303(2)). "USERRA 'is construed broadly and in favor of its military beneficiaries.'" *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 604 (8th Cir. 2021) (quoting *Scudder v. Dolgencorp, LLC*, 900 F.3d 1000, 1004 (8th Cir. 2018)).

"An employer violates USERRA if the individual's military status . . . is a 'motivating factor' in an employer's actions against the employee." *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019) (citing 38 U.S.C. § 4311(c)(1)–(2)). An employee has the initial burden of showing "that military status was a motivating factor in the adverse employment action." *Id.* at 989 (quoting *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011)). Once the employee

6

makes such a showing, the burden shifts to the employer to prove, by a preponderance of the evidence, "that the action would have been taken despite the protected status." *Rademacher*, 645 F.3d at 1010 (quoting *Maxfield*, 427 F.3d at 551).

Both parties agree that tuition benefits under the EEP are a "benefit of employment" under USERRA. Filing 44 at 8; *see also Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 375 (W.D.N.Y. 2014) (assuming that the plaintiff had stated a prima facie case of discrimination under USERRA because his employer initially denied him tuition reimbursement). Therefore, the Court turns to whether OPPD denying Kelly EEP benefits because he was already receiving G.I. Bill benefits constitutes military-based discrimination. According to Kelly, OPPD's denial was discrimination on the basis of his military service because his entitlement to G.I. Bill benefits arose from his military service Filing 34 at 16–19. OPPD responds that permitting Kelly to receive both G.I. Bill benefits and EEP benefits would grant him preferential treatment, which USERRA does not require. Filing 30 at 7–8. OPPD further argues that its denial of EEP benefits was not motivated by Kelly's military service but rather because his tuition was fully covered by the G.I Bill. Filing 44 at 8.

This case is an unusual one within the compendium of USERRA discrimination cases. Ordinarily, USERRA discrimination cases are predicated on an employer taking some adverse action against an employee because the employee joined the military or had to perform an obligation associated with military service. *See, e.g.*, *Rademacher*, 645 F.3d at 1011 (ruling on a discrimination claim based on an employer allegedly firing the plaintiff because he had enlisted in the Air Force Reserve); *Lisdahl v. Mayo Found.*, 633 F.3d 712, 718 (8th Cir. 2011) (ruling on a constructive discharge claim when the plaintiff's supervisor made alleged anti-military comments that purportedly caused the plaintiff to resign); *Clegg v. Arkansas Dep't of Correction*, 496 F.3d

922, 930–31 (8th Cir. 2007) (ruling on a discrimination claim based on an employer changing an employee's job responsibilities after the employee returned from serving overseas). In contrast to the average USERRA discrimination case, Kelly argues that a benefit he received through his military service caused his employer to discriminate against him, rather than him enlisting in the military or performing a military obligation. The issue the Court must resolve is whether USERRA also prevents employers from denying a benefit of employment when the employee is receiving a similar military benefit.

USERRA prohibits an employer from denying any "benefit of employment" on the basis of an employee's military "membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a). It is Kelly's burden to show that his military status was a motivating factor in OPPD's denial of EEP benefits. *See McConnell*, 944 F.3d at 989 ("The initial burden is on the party invoking the protections of USERRA to show that military status was a motivating factor in the materially adverse employment action." (citing *Rademacher*, 645 F.3d at 1010)). Kelly seems to contend that he is being denied a benefit of employment because of his "performance of service," a protected characteristic under § 4311(a) of USERRA. Filing 34 at 16–119. Kelly reasons that because he received G.I. Bill benefits "by virtue of his military service," OPPD is discriminating against him on the basis of his military service. Filing 34 at 18.

Very few courts have addressed whether denying a benefit of employment because an employee is already receiving a benefit from military service is actionable under § 4311(a) of USERRA. In *Rembey v. Mucky Duck, Inc.*, a plaintiff alleged discrimination on the basis of "his military service" when his employer allegedly reduced his pay because he was already receiving disability benefits from the Department of Veterans Affairs. *Rimbey v. Mucky Duck, Inc.*, No.

8

217CV103FTM99MRM, 2017 WL 2812507, at *1–2 (M.D. Fla. June 29, 2017). Judge Steele of the Middle District of Florida concluded, in a short order, that the plaintiff had plausibly alleged a USERRA claim for denial of a benefit of employment based on the "plaintiff's military status." *Id.* at *2.

However, in *Martinez v. Sun Life Assurance Company of Canada*, Judge Sorokin of the District of Massachusetts determined that the defendant did not discriminate against the plaintiff by offsetting his disability payments under an employer's disability plan by the amount the plaintiff received from his Veterans' Disability Benefits. *Martinez v. Sun Life Assurance Co. of Canada*, No. 16-CV-12154-LTS, 2018 WL 5045183, at *1, *3–4 (D. Mass. Oct. 16, 2018), *aff'd*, 948 F.3d 62 (1st Cir. 2020). Judge Sorokin concluded that the defendant did not discriminate against the plaintiff "based on his status as a veteran," because the offset of benefit payments occurred due to the fact that "he was receiving benefits for the same disability from other sources." *Id.* at *3 n.4. The First Circuit Court of Appeals affirmed, holding, "The simple fact that [the plaintiff's] Plan benefits were reduced by the amount of his Veterans' Benefits does not mean that [the defendant] was motivated, at least in part, by his status as a servicemember to make that reduction." *Martinez v. Sun Life Assurance Co. of Canada*, 948 F.3d 62, 74 (1st Cir. 2020). Otherwise, the court explained, veteran recipients could "double-collect disability benefits for the same underlying condition," which would amount to "preferential treatment to servicemembers." *Id.*

The Court also finds useful guidance in how courts treat USERRA discrimination claims when an employee alleges his or her employer took an adverse action because of a disability the employee suffered during his or her military service. Disabilities suffered during military service and benefits earned from military service are similar for the purposes of the issue before the Court

because both arise from an individual's service in the military. Nevertheless, even when a connection between a disability and military service exists, courts have routinely found that an employer does not violate USERRA if it denies some benefit of employment because an employee suffered a service-related disability. *See Hughes v. City of New York*, No. 20CV3341AMDRLM, 2021 WL 7542440, at *6 (E.D.N.Y. Aug. 25, 2021) ("Federal courts have held that discrimination based on a service-related disability, as opposed to military status, does not form a cause of action under USERRA."). These courts begin by observing that "a USERRA plaintiff has the initial burden of demonstrating that his military service, as distinct from a disability resulting from service, was a substantial or motivating factor in the employer's decision." *Carroll v. Delaware River Port Auth.*, 89 F. Supp. 3d 628, 632–34 (D.N.J. 2015); *see also Kieffer v. Planet Fitness of Adrian, LLC*, No. 17-CV-11307, 2017 WL 3581315, at *4 (E.D. Mich. Aug. 18, 2017) ("Plaintiff must allege that his protected status as a veteran was a substantial or motivating factor in his termination. Instead, he has alleged that his taking time off of work to attend medical appointments related to his disability was the substantial or motivating factor in his termination . . . ."). Absent additional facts, the courts explain, an employer does not violate USERRA when it denies a benefit of employment because of an employee's disability even if that disability occurred during military service. *See Carico v. UPS Ground Freight, Inc.*, No. 2:19-CV-756-WKW, 2021 WL 2545464, at *24–25 (M.D. Ala. June 21, 2021) (rejecting argument that being terminated for missing work to attend medical appointments for a service-related disability constitutes discrimination based upon the plaintiff's "status as a veteran"); *Ferrell v. Ezpawn Oklahoma, Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *4 (W.D. Okla. July 16, 2019) (observing that the plaintiff's claim was "based on his disability, not his military service"); *Wolfgram v. G4S Secure Sols. (USA), Inc.*, No. 1:18CV198, 2018 WL 5016337, at *3 (N.D. Ind. Oct. 15, 2018) ("[T]he fact that [the plaintiff's]

10

alleged disability began during his military service does not in itself implicate USERRA absent additional facts."). Instead, the courts state that such claims more properly arise under the Americans with Disabilities Act. *See Carico*, 2021 WL 2545464, at *25 (commenting that the plaintiff's USERRA claim was "a veneer for an [Americans with Disabilities Act] disability discrimination claim").

The Court finds persuasive the analyses of the *Martinez* decisions and the courts that have concluded that disabilities suffered during military service cannot support a USERRA discrimination claim. Although the Eighth Circuit Court of Appeals emphasizes that USERRA "must be broadly construed in favor if its military beneficiaries," *Maxfield*, 427 F.3d at 551, the Court cannot supply a reading of USERRA that eliminates Kelly's burden to show that his "military status . . . is a 'motivating factor in [OPPD's] actions against [him].'" *McConnel*, 944 F.3d at 988 (citing 38 U.S.C. § 4311(c)(1)–(2)). Like service-related disabilities, the fact that Kelly is entitled to G.I Bill benefits because he served in the military, standing alone, does not implicate USERRA. Offsetting tuition assistance by the amount an employee receives through G.I. Bill benefits is not the same as denying tuition assistance on the basis of an employee's military status. As a matter of law, an employer does not violate USERRA simply because it takes an employee's G.I. Bill benefits into consideration when doling out tuition assistance.

Turning to the facts of this case in light of this legal determination, the Court concludes that Kelly has not provided sufficient evidence from which a reasonable jury could find that OPPD violated USERRA. The EEP conditions tuition assistance on whether employees are already receiving tuition assistance from other sources. Filing 31-2 at 5. Other sources under the EEP include "VA Education Benefits" like the G.I. Bill. Filing 31-2 at 5. OPPD did not deny Kelly EEP benefits because he was a veteran or performed military service; it denied him EEP benefits

11

because he was receiving tuition assistance from another source. In other words, the reason for OPPD's decision is at least one step removed from his military service. Kelly has failed to provide the Court with any evidence that his military status motivated OPPD to deny him EEP benefits. *See Torgerson*, 643 F.3d at 1042 ("[T]he nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" (quoting *Celotex*, 477 U.S. at 324)). Instead, Kelly rests his case on the fact that OPPD offset his EEP benefits based on the amount Kelly received from his G.I. Bill benefits. The Court has concluded, as a matter of law, that the fact that Kelly receives G.I. Bill benefits, standing alone, cannot support a USERRA claim. Without any other facts showing that his military status motivated OPPD to deny him EEP benefits, Kelly's USERRA claim must fail. A reasonable jury could not find in Kelly's favor, and therefore OPPD is entitled to summary judgment. *See id.* ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (quoting *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009))).

Kelly argues that he can show discrimination because the G.I. Bill is different from Pell Grants and scholarships, both of which are considered under the EEP when determining an entitlement to EEP benefits. Filing 40 at 13–14. According to Kelly, unlike Pell Grants and scholarships, he received his G.I. Bill benefits by serving in the military and paying $1,800 while in the military. Filing 40 at 14. However, the fact that the G.I. Bill is different in some respects from Pell Grants and scholarships is not evidence that OPPD was motivated to deny him EEP benefits because of his military status. Kelly must provide some evidence that the inclusion of G.I. Bill benefits within the EEP was motivated by the G.I. Bill's relationship to the military. Kelly has not made such a showing, and therefore the fact that G.I. Bill benefits are different from Pell Grants and scholarships is of no consequence.

Kelly also argues that a statement made to him by one of the administrators of the EEP, Darlean Brown, shows USERRA-prohibited discrimination. In his deposition, Kelly testified that Brown explained to him that if Kelly "had a rich aunt that was paying for college that OPPD would . . . have approved [Kelly's EEP] benefits." Filing 31-3 at 11. However, this statement is hearsay and cannot be used to resist summary judgment. *See Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) ("[I]nadmissible hearsay evidence cannot be used to defeat summary judgment."). And even if it was admissible, this alleged statement does not show that OPPD denied Kelly EEP benefits because of his military status. Indeed, Brown was not the individual who decided to deny Kelly EEP benefits. While providing EEP benefits when "rich aunts" are already paying for college may seem irrational, the Court's concern here is discrimination, not the wisdom of OPPD's policies. *See generally Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 977 (8th Cir. 2012) ("The employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999))).

Kelly also points to statements by Pittman, the individual who denied Kelly's OPPD benefits, claiming that they show that Pittman was motivated by a discriminatory animus to deny EEP benefits to Kelly. Pittman told Kelly that his application for EEP benefits was an illegal duplication of federal benefits which could be considered unjust enrichment and subject to prosecution and that she found his blatant and aggressive display of entitlement extremely disheartening. Pittman also told other employees at OPPD that OPPD did not need more employees like Kelly. Contrary to Kelly's assertion, Pittman's statements never referenced his military status.

At most, they show that Pittman was frustrated with dealing with Kelly. Because her frustration was untethered to Kelly's military status, her statements are not evidence from which a reasonable jury could conclude that OPPD denied Kelly EEP benefits on the basis of his military status.[5] *See McConnell*, 944 F.3d at 989 (holding that "being 'ridiculed,' 'belittled,' and 'demeaned' is by itself not actionable under USERRA" and that a few comments about the plaintiff's military status were insufficient to show that his military status played a role in his employer's decision to fire him).

Finally, although an investigator with VETS determined that OPPD had violated USERRA, the investigator's opinion does not play a role in this Court's decision. Under 38 U.S.C. § 4322, an individual claiming a USERRA violation may file a complaint with the Secretary of Labor. 38 U.S.C. § 4311(a). After receiving a complaint, "the Secretary shall investigate" the complaint and, if the investigator determines "that the action in [the] complaint occurred," the investigator "shall attempt to resolve the complaint by making reasonable efforts to ensure that the . . . entity named in the complaint complies with [USERRA]." *Id.* at § 4311(d). If unsuccessful, the complainant may ask the Department of Labor to refer his complaint to the Department of Justice, which has discretion to seek judicial enforcement. 38 U.S.C. § 4323(a). The complainant may also bring a private suit after the Department of Labor's investigation. *Id.*

While Kelly references the VETS investigator's findings in an effort to sway the Court in his favor, nothing in USERRA purports to obligate this Court to consider the opinions of the VETS investigator. Agency regulations interpreting a statute are entitled to *Chevron*-style deference and interpretations "contained in formats such as opinion letters" receive *Skidmore* deference to the extent they have the "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

---

[5] To the extent Kelly is using these statements to assert a USERRA retaliation claim, Kelly never included such a claim in his Complaint. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (holding that parties cannot "manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

In contrast, a letter containing the findings of a single VETS investigator sent to the complainant and the employer is not a regulation or akin to an agency opinion letter and is not entitled to any deference. *See Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2021 WL 2080199, at *13 (E.D. Wash. May 24, 2021) (finding that a letter from a Department of Labor investigator concluding that the defendant violated USERRA was not entitled to any deference); *see also Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1191 (D. Colo. 2012) (deciding that the "notes and conclusions of a single [Department of Labor] investigator" were not entitled to any deference).

Indeed, USERRA contemplates separate judicial enforcement, rather than enforcement through an investigation with the Department of Labor. Accordingly, the Department of Labor, through a regulation, states that VETS does not have authority to order compliance with USERRA. *See* 20 C.F.R. § 1002.290. The Department of Labor's conclusion does not even bind the parties, as a complainant is free to sue an employer regardless of the investigator's findings. Thus, the investigator's determination that OPPD violated USERRA is not entitled to any deference and does not affect this Court's decision.

Moreover, the letter does not generate a genuine issue of material fact on whether OPPD denied EEP benefits to Kelly on the basis of his military status. The letter does not contain any factual findings beyond the fact that OPPD retroactively denied and recouped the tuition payments it had made to Bellevue University in 2010, which is undisputed in this case. Filing 35-3 at 24. Instead, the letter is a determination by the VETS investigator that OPPD violated USERRA. The conclusion by the VETS investigator, which differs from the conclusion of this Court, does not establish a genuine dispute of material fact precluding the entry of summary judgment in OPPD's favor because the Court relies on the same facts as the VETS investigator. *See Alexander v.*

15

*CareSource*, 576 F.3d 551, 563 (6th Cir. 2009) (holding that, because the district court considered the same facts as the government agency, the conclusion in the agency's report did not establish a material issue of fact).

USERRA is not implicated merely because an employer considers the G.I. Bill to offset its tuition assistance program. Kelly has not provided any evidence that the denial of EEP benefits was motivated by his military status. Accordingly, the Court grants OPPD summary judgment and denies Kelly summary judgment.

### IV.     CONCLUSION

USERRA is not implicated in this case, and Kelly does not provide evidence from which a reasonable jury could find that OPPD violated USERRA. Under these circumstances, the Court grants OPPD's Motion for Summary Judgment and denies Kelly's Motion for Summary Judgment. Accordingly,

IT IS ORDERED:

1. Kelly's Motion for Summary Judgment, Filing 33, is denied;
2. OPPD's Motion for Summary Judgment, Filing 29, is granted;
3. Kelly's Complaint, Filing 1, is dismissed; and
4. The Court will enter a separate judgment.

Dated this 23rd day of May, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge